UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOSHUA A. SCHOHN,

                              Defendant.

**DECISION AND ORDER**
19-CR-139-A

---

On November 1, 2021, a jury found *pro se* Defendant Joshua A. Schohn guilty of two counts of production and attempted production of child pornography, and two counts of possession of child pornography.  The jury also found that as to the devices charged in the possession counts, Defendant possessed a visual depiction of a minor engaging in sexually explicit conduct who had not yet reached the age of puberty or was less than 12 years old.[1]  Dkt. No. 112 (Jury Verdict); *see* Dkt. No. 52 (Second Superseding Indictment).

Defendant moves for a judgment of acquittal notwithstanding the jury's verdict pursuant to Federal Rule of Criminal Procedure 29(c) or, alternatively, for a new trial pursuant to Federal Rule of Criminal Procedure 33.  Dkt. No. 120.  The Government filed a response in opposition to the motions, Dkt. No. 129, and Defendant did not

---

[1] On November 2, 2021, in the forfeiture phase of the trial, the jury returned a special forfeiture verdict finding that the devices listed in each of the four counts of the Second Superseding Indictment contained visual depiction(s) resulting in those respective counts and were used or intended to be used to commit or promote the commission of the charged offenses.  Dkt. No. 116.  Defendant raises no argument in his post-trial motions pertaining to forfeiture.

file reply papers, *see* Dkt. Nos. 137, 138.  Oral argument was held remotely on April

6, 2022.[2]  For the reasons stated below, the motions are DENIED.

## BACKGROUND

Familiarity with the facts of the case and the evidence presented at trial is

presumed.  Nevertheless, the following is a brief summary of the evidence relevant

to the instant motions.  Because the Defendant was found guilty, the Court

construes the evidence "in the light most favorable to the government, with all

reasonable inferences drawn in its favor."  *United States v. Rowland*, 826 F.3d 100,

105 n.1 (2d Cir. 2016) (quotation marks omitted); *see* Fed. R. Crim. P. 29.

The two production counts involved minor victims Jane 1 and Jane 2.  The

evidence at trial established that Jane 1 was 8 or 9 years old at the time of the

criminal conduct, while Jane 2 was 6 or 7 years old at that time.  The evidence

further showed that Defendant surreptitiously video-recorded Jane 1 and Jane 2, the

daughters of L.P., the latter who he was dating at the time.[3]  This occurred on an

October 2018 trip to a waterpark in Erie, Pennsylvania, in their hotel room.  Each

video showed Defendant setting up, adjusting, and retrieving the camera.  The first

video (forming the basis for Count 1) depicted, in part, Jane 1 seated on the

---

[2] During the argument, which Defendant argued *pro se*, he stated at the outset that he wanted to represent himself with respect to only one of the arguments made by standby counsel in the written Rule 29/ Rule 33 motion, specifically the fact witness/ expert witness argument.  In response to the Court's queries asking for clarification, Defendant appeared to suggest that he had wanted standby counsel to make only that single argument in the written motion, and none of the others.  Out of an abundance of caution taking into account Defendant's *pro se* status, the Court has nevertheless addressed the entirety of the motion at Docket Number 120.

[3] Prior to the start of trial, the Court issued a Protective Order requiring the two minor victims of Counts 1 and 2 to be referred to throughout the trial, and in public filings, as "Jane 1" and "Jane 2," respectively.  In this Decision and Order, the Court has similarly elected to refer to their mother by initials, only.

bathroom toilet while she urinated.  Jane 1's vagina is visible in the video when she wipes herself after urinating.  Defendant later converted this video into a GIF and several shorter videos,[4] each showing Jane 1 urinating and wiping herself, with one entitled "goddamn."  The second video (forming the basis for Count 2) depicted Jane 1 and Jane 2 changing into their pajamas.  For a period, Jane 2 is completely nude, and her vagina is visible when she turns around and bends over.  While filming this video Defendant adjusted his laptop screen to capture the entirety of Jane 1 and Jane 2.

A third video from the summer of 2018 (a few months before the waterpark incident) was introduced at trial pursuant to Rule 414, which showed Defendant masturbating beneath a blanket while touching Jane 1's inner thigh.

In January 2019, L.P. borrowed Defendant's cell phone and a couple weeks later accidentally happened upon some disturbing searches and videos in Defendant's YouTube history and Google search history (she was still logged into his YouTube and Google accounts and could also see real-time updates of his Internet activity).  She decided to confront Defendant after the New York State Police told her that because the images did not show children's genitalia, they were not illegal under New York State law.

On February 5, 2019, L.P. secretly audio recorded a confrontation between herself, L.P.'s brother (who was Defendant's roommate at the time), and Defendant,

---

[4] As explained by one of the Government's witnesses at the trial, "GIF" stands for "graphics interchange format."  Essentially, the creator of a GIF "can make an except of video by it's really considered multiple still images pasted together in a row and it keeps on playing over and over and over again."  The witness agreed that you can use an original, regular video file to create a GIF file. Dkt. No. 135, p. 42.  Put differently, a GIF is a video excerpt that plays repeatedly.

which was played at trial.  L.P. and her brother repeatedly accused Defendant of being a pedophile and watching sexual videos of children; Defendant did not deny these accusations but claimed that he was viewing the videos to "document them for a case" and to undercover an alleged, undercover child pornography ring.  He also said he did not believe pedophilia was wrong.  After a physical confrontation between Defendant and L.P., Defendant left his apartment and walked to a neighboring town.  When New York State troopers were informed by L.P. of the earlier confrontation, a trooper picked up Defendant and took him to the New York State Police barracks.

In the interim, L.P. sought medical attention as the confrontation with Defendant had escalated to a physical encounter.  A friend of L.P.'s brother was entrusted to make sure Defendant's laptop did not lock so that the screen remained operational, and to see whether there was any content on the laptop of Jane 1 and Jane 2.  L.P.'s brother's friend found the videos of Jane 1 and Jane 2 from the hotel room, along with many other materials depicting children.  He changed the laptop settings so that it would not switch to "sleep" mode and testified that he did not access the Internet or do anything to alter, modify, or add to any files on the laptop. When L.P. returned to the apartment and saw the videos of her children, she went to the State police and gave them Defendant's laptop and cell phone, stating she believed the images constituted child pornography

Defendant was interviewed at the barracks and made a number of incriminating statements, including that he had a folder on his laptop labeled "senti," which he described as "like sentimental" where he stored his child pornography.  He

4

also admitted to filming Jane 1 and Jane 2 in Pennsylvania so he could "see it later," turning one of those videos into a GIF, and filming himself masturbating while touching Jane 1's thigh and "was thinking about maybe . . ." but he "got too nervous and was like no don't do that."  Defendant also admitted that he had been viewing child pornography for about five years; there was "probably a lot" of it on his devices; the forensic investigators would find images of children from approximately ages 5 to 17; and he searched for the images using terms such as "PTHC," *i.e.*, "preteen hardcore," and "CP," *i.e.*, "child pornography."  The entire three-hour interview, which was audio- and video-recorded, was played for the jury.

After Defendant's arrest, New York State Police Investigator John Lombardi (hereinafter, "Investigator Lombardi") later performed a forensic analysis of Defendant's laptop and cell phone pursuant to a search warrant.  Investigator Lombardi found many "files of interest" on each device, specifically, over 4,000 unique images and over 1,000 unique videos on the laptop, including those in a folder named "senti," and over 400 unique images on the cell phone.  He also retrieved identical copies of a resume on each device entitled with Defendant's name.

Defendant sought to prevent the introduction of the images into evidence by stipulating that the evidence met the statutory definition of child pornography. The Government rejected the proposed stipulation, and, over a defense objection, the Court permitted the introduction of 10 images and 1 video clip from the laptop, and 7 images from the cell phone.  Only the jury was shown these images for several seconds each, on a PowerPoint-type display, and the gallery did not see the images

of child pornography.  Also, over Defendant's objection, the jury was shown the video of Defendant masturbating while touching Jane 1's inner thigh.

Defendant elected to testify in his own defense during the trial.[5]  He claimed that while he was seen on the videos filmed in the waterpark hotel room, he did not knowingly record Jane 1 and Jane 2; rather, some unidentified individual must have set up his laptop to immediately begin recording once it was opened.  Defendant speculated that this individual may have been L.P.'s brother, or L.P.'s brother's friend.  Defendant also theorized that someone else planted child pornography on his devices and made the shortened video of Jane 1 wiping herself that was labeled "goddamn."  As to the video of Defendant masturbating while touching Jane 1, Defendant testified that it was not him in the video.  And regarding his interview with the police, Defendant testified that he was "lying [his] ass off" to them and merely told them what they wanted to hear.

Despite Defendant's trial testimony, Defendant was found guilty by the jury of all four counts in the Second Superseding Indictment after a five-day trial, discounting the forfeiture phase.  The jury made the additional finding that Defendant possessed a visual depiction of a minor engaging in sexually explicit conduct who had not yet reached the age of puberty or was less than 12 years old as to each of the two possession counts.

---

[5] As Defendant was *pro se* at the trial, for his direct testimony the Court had his standby counsel ask him a list of questions he had composed.

## **DISCUSSION**

The Court first notes that Defendant's Rule 29/ Rule 33 motion was untimely. The 14-day deadline was November 16, 2021, if counting from the date the forfeiture phase of the trial was determined and the jury was discharged, yet the motion was filed on the Court's electronic filing system on November 17, 2021.  Even so, because the Government did not raise the timeliness issue in its papers, the Court deems it forfeited and addresses the motion on the merits.  *See United States v. Robinson*, 430 F.3d 537, 541-542 (2d Cir. 2005).

Defendant argues that the Government failed to prove Count 2 by legally sufficient evidence and venue as to Counts 1 and 2, and that the guilty verdict was otherwise manifestly unjust.  The Court concludes otherwise.

## I.    **Defendant's Rule 29 Motion**

Defendant moves for a judgment of acquittal notwithstanding the jury's verdict on two bases: (1) venue in the Western District of New York was not established as to Counts 1 and 2, and (2) the evidence is insufficient to sustain the conviction on Count 2.

### A.  Standard for judgment of acquittal

Rule 29 of the Federal Rules of Criminal Procedure requires a court to set aside a jury's verdict, and to acquit a defendant despite a verdict of guilty, on any charge for which the evidence is insufficient to sustain the conviction.  Fed. R. Crim. P. 29.  A defendant challenging the legal sufficiency of evidence supporting a guilty verdict "bears a heavy burden."  *United States v. Heras*, 609 F.3d 101, 105 (2d Cir.

2010) (quotation omitted); *United States v. Si Lu Tian*, 339 F.3d 143, 150 (2d Cir. 2003) (same).

The Second Circuit "emphasize[s] that courts must be careful to avoid usurping the role of the jury." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (quoting *United States v. Jackson*, 335 F.3d 170, 180 (2d Cir. 2003)).  The Government must receive the benefit of "all inferences . . . [on] issues of credibility in favor of the [jury's] verdict." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000).  "Exclusive responsibility" for assessing witness credibility lies with the jury. *United States v. Strauss*, 999 F2d 692, 696 (2d Cir. 1993).

Before setting aside a jury's verdict, a court must view all forms of evidence in the light most favorable to the Government, and the Government is credited with every reasonable inference that could have been drawn in its favor.  *See United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016).  A "court examines each piece of evidence and considers its probative value before determining whether it is unreasonable to find the evidence in its totality, not in isolation, sufficient to support guilt beyond a reasonable doubt." *United States v. Goffer*, 721 F.3d 113, 124 (2d Cir. 2013) (quotation omitted); *see United States v. Casamento*, 887 F.2d 1141, 1156 (2d Cir. 1989).

A Rule 29 motion can be granted only when evidence that the defendant committed the crime alleged "is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (quotations omitted).  In even a very close case, if "either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, [the court]

8

must let the jury decide the matter." *United States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011) (quotation omitted); *see Facen*, 812 F.3d at 286 (same).  In other words, a court must sustain a jury's verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

B.  <u>Venue as to Counts 1 and 2</u>

The Government argues that Defendant waived his venue challenge by failing to make this argument at trial after the Government rested its case—and by first making this argument in his post-trial Rule 29 motion.

The Second Circuit has "identified two situations where a finding of waiver is proper: (a) when the indictment or statements by the prosecutor clearly reveal this defect but the defendant fails to object; and (b) when, after the government has concluded its case, the defendant specifies grounds for acquittal but is silent as to venue."  *United States v. Price*, 447 F.2d 23, 27 (2d Cir. 1971) (collecting cases); *see United States v. Rommy*, 506 F.3d 108, 119 (2d Cir. 2007) ("the law treats objections to venue as waived unless specifically articulated in [a defense] motion for acquittal.").

Here, when the Government rested, Defendant moved for a directed judgment of acquittal but made no mention of venue.  As such, Defendant has waived the issue of venue.  *See, e.g.*, *United States v. Kenner*, No 13-CR-607 (JFB)(AYS), 2019 WL 6498699, 2019 U.S. Dist. LEXIS 208525, *8-10 (E.D.N.Y. Dec. 3, 2019) (holding that the defendant, who moved for acquittal pursuant to Rule 29 after the Government rested its case but did not argue there was no venue, had

waived that issue); *United States v. Rodriguez*, 05-CR-630 (SJF), 2007 WL

2908246, 2007 U.S. Dist. LEXIS 74681, *7 (E.D.N.Y. Oct. 5, 2007) ("Defendant

asserts [in his Rule 29 motion] for the first time that the government failed to

establish venue within the Eastern District of New York . . . However, failure to prove

venue cannot be asserted for the first time after a verdict, as is the case here.").

Because the Court has concluded the venue challenge was waived, it need

not address the parties' arguments concerning the merits of this issue and declines

to do so.

C. Sufficiency of the evidence on Count 2

During the trial, the jury was instructed that Count 2, charging Defendant with

production of child pornography in violation of 18 U.S.C. §§ 2251(a) and 2251(e),

required the Government to prove the second element beyond a reasonable doubt,

*i.e.*, that Defendant "used, employed, persuaded, induced, enticed or coerced . . .

Jane 2, in Count 2, to take part in sexually explicit conduct for the purpose of

producing a visual depiction of that conduct."

The term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A)(v)

as, among other things, the "lascivious exhibition of the anus, genitals, or pubic area

of any person"—per the Government's theory of the case.  The jury was further

instructed on the six factors from *United States v. Dost*, 636 F. Supp. 828, 832 (S.D.

Cal. 1986), *aff'd sub nom. United States v. Wiegand*, 812 F.2d 1239 (9th Cir. 1987),

to assist in finding whether there was "lascivious exhibition" in this case.  *See United

States v. Rivera*, 546 F.3d 245, 252-253 (2d Cir. 2008) (holding that "it is no error for

a district court to recommend the *Dost* factors as considerations, making any

adaptations or allowances warranted by the facts and charges in a particular case. That said, the jury should not be made to rely on the *Dost* factors with precision to reach a mathematical result, or to weigh or count them, or to rely on them exclusively."), *cert. denied* 555 U.S. 1204 (2009).

The six *Dost* factors are:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area; 2) whether the setting of the visual depiction is sexually suggestive, *i.e.*, in a place or pose generally associated with sexual activity; 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child; 4) whether the child is fully or partially clothed, or nude; 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity; [and] 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*Rivera*, 546 F.3d at 249, citing *Dost*, 636 F. Supp. at 832.

Indeed, the jury charge in this case was an amalgamation of the jury instructions given by the district court in *Rivera*, 546 F.3d at 249 ("The term lascivious exhibition means a depiction which displays or brings to view to attract notice to the genitals or pubic area of minors in order to excite lustfulness or sexual stimulation in the viewer.  Not every exposure of the genitals or pubic area constitutes a lascivious exhibition . . ."), and clarifications made by the Second Circuit, particularly as to the sixth factor, in *United States v. Spoor*, 904 F.3d 141, 150 (2d Cir. 2018) ("We pick up where *Rivera* left off, and clarify that the sixth *Dost* factor — whether the image was designed to elicit a sexual response in the viewer — should be considered by the jury in a child pornography production case only to the extent that it is relevant to the jury's analysis of the five other factors and the

11

objective elements of the image . . . At a minimum, and particularly where evidence is admitted pursuant to Rule 414, district courts should consider charging the jury expressly that the defendant's subjective intent alone is not sufficient to find the content lascivious.").

Defendant argues that none of the *Dost* factors apply here, other than the sixth factor—the jury's likely finding that Defendant had a "prurient motive in recording Jane 2," which cannot constitute the sole factor here.  Defendant also argues that "[o]bjectively speaking, the video would not elicit a sexual response from an ordinary viewer."  The Government disagrees and argues that the evidence was sufficient to support a conviction of production of child pornography, and in the alternative to support a conviction of *attempted* production of child pornography (Count 2 included both theories of liability and the jury was so charged).  *See United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996) ("When the jury is properly instructed on two alternative theories of liability, as here, we must affirm when the evidence is sufficient under either of the theories.") (internal citations omitted).

In assessing the evidence to resolve Defendant's Rule 29 motion, the Court must evaluate "the totality of the government's case, . . . as each fact may gain color from others."  *United States v. Guadagna*, 183 F.3d 122, 130 (2d Cir. 1999), citing *United States v. Monica*, 295 F.2d 400, 401 (2d Cir. 1961).

The Court concludes that, in viewing the evidence in the light most favorable to the Government, a reasonable jury could find that there was a "lascivious exhibition" of Jane 2's genitals or pubic area in the subject video.

Because Defendant "surreptitiously recorded [Jane 2] going about routine bathroom tasks," both the third *Dost* factor (unnatural pose or inappropriate attire) and the fifth *Dost* factor (sexual coyness or willingness to engage in sexual activity) are clearly inapplicable. *United States v. Goodale*, 831 F. Supp. 2d 804, 811-812 (D. Vt. Nov. 28, 2011). Even so, there are other factors that the jury could have concluded, and did conclude, weighed toward finding a "lascivious exhibition" took place. *See Spoor*, 904 F.3d at 149 ("Although . . . the videos do not involve suggestive posing, sex acts, or inappropriate attire, none of these is necessary to child pornography. Rather, as the District Court instructed, whether a video or image is a lascivious exhibition must be decided by the jury based on the overall content of the material.").

As to the second factor, the Second Circuit has held that a bathroom, which is the setting where Jane 2 was changing, may be deemed "sexually suggestive." *Spoor*, 904 F.3d at 149 ("A reasonable finder of fact could . . . have found the setting of the video relevant. Although most typically used as a place to serve biological functions, as our sister circuits have recognized, bathrooms also can be the subject of sexual fantasy.") (collecting cases); *see Goodale*, 831 F. Supp. 2d at 810 ("A reasonable jury could find that the shower and toilet were sexually suggestive settings which satisfy this factor.").

A reasonable jury could find the fourth factor (being "fully or partially clothed, or nude") was met as well, as Defendant captured Jane 2 changing into her pajamas, and she was also completely naked for a brief period, with her vagina visible to the viewer.

Moreover, the jury was instructed that it could consider the sixth factor, Defendant's intent to elicit a sexual response in the viewer, in the event it was relevant to the jury's consideration of the other five *Dost* factors.  The jury was also charged that Defendant's intent alone was not enough to find a certain image lascivious.

On the sixth factor, Defendant first trained the laptop's camera on the area where Jane 1 and Jane 2 were changing into their pajamas, and then refocused the camera's lens to view Jane 2's entire, nude body, while informing L.P. he was "not looking."  And aside from the context of Defendant's production of the video, there was plenty of other evidence presented to the jury regarding Defendant's intent and his sexual interest in children that the jury could consider.  That evidence included the search terms Defendant used on his computer when looking for child pornography, the greater than 4,000 images and videos of child pornography Defendant had accumulated, the video that showed Defendant masturbating while touching Jane 1's inner thigh, the video that Defendant produced in the waterpark's hotel room of Jane 1 wiping her genitals while on the toilet, and the GIF of Jane 1 wiping herself that Defendant entitled "goddamn."

For sake of argument, even if the evidence was insufficient to convict Defendant of production of child pornography, the evidence was sufficient to convict Defendant under the alternative theory of attempted production of child pornography, for which the central issue is intent.  *See, e.g.*, *United States v. Puglisi*, 3:09-CR-75, 2010 U.S. Dist. LEXIS 164870, *3-4 (N.D.N.Y. Feb. 25, 2010) (denying a Rule 29 motion on an attempted production count, and noting that "[w]hile the

14

government was required to prove that Defendant acted with the purpose of producing a visual depiction of the child engaging in sexually explicit conduct, it was not required that the government prove that the visual depiction of that conduct was actually produced."), *aff'd by United States v. Puglisi*, 458 Fed. Appx. 31 (2d Cir. Jan. 24, 2012) (summary order), *cert. denied* 566 U.S. 1002 (2012).

The Court has considered each of Defendant's two arguments for a judgment of acquittal and finds them to be without merit.  Defendant's Rule 29 motion is therefore denied.

## II.   Defendant's Rule 33 Motion

Defendant alternatively moves for a new trial, arguing that "a combination of evidentiary rulings" effectively denied him a fair trial.  Those challenged rulings are: (1) publishing an "excessive number" of child pornography images to the jury; (2) admitting the "masturbation video" into evidence; and (3) permitting Government witness Investigator Lombardi to testify as both a fact witness and an expert witness.

### A.  Standard for a new trial

Rule 33 provides that a court may grant a defendant a new trial "if the interest of justice so requires."  Fed. R. Crim. P. 33(a); *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013).  A defendant's Rule 33 burden to show that a new trial is warranted is also a heavy burden.  *See United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).  A court may exercise its authority under Rule 33 only " 'sparingly and in the most extraordinary circumstances.' "  *United States v. Sanchez*, 969 F.2d 1409, 1413 (2d Cir. 1992) (internal citation omitted). "To grant [a] motion [for a new trial], '[t]here must be a real concern that an innocent person may have been

convicted.' "  *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013) (internal citations omitted).

On the one hand, Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." *Sanchez*, 969 F.2d at 1413.  A trial court is permitted to weigh the evidence and credibility of witnesses.  *Id*.  On the other hand, however, "motions for a new trial are disfavored in this Circuit; the standard for granting such a motion is strict . . . "  *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995).

While a court has "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001), the "court must strike a balance between weighing the evidence and credibility of witnesses and not 'wholly usurp[ing]' the role of the jury," *United States v. Autuori*, 212 F.3d 105, 120 (2d Cir. 2000).  "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment" under Rule 33.  *Sanchez*, 969 F.2d at 1414.  A court's rejection of trial testimony does not automatically permit a new trial; the court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation."  *Ferguson*, 246 F.3d at 134. "The ultimate test is whether letting a guilty verdict stand would be a manifest injustice."  *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005) (internal quotation marks and citations omitted).

B. Number of child pornography images published to the jury

Defendant argues that the Court abused its discretion under Federal Rule of Evidence 403 in permitting the Government to publish more than one image of child pornography from Defendant's laptop and cell phone, the devices named in the possession counts (Counts 3 and 4, respectively). According to Defendant, the probative value of such evidence was substantially outweighed by the risk of unfair prejudice to Defendant, and each image after the first had "little probative value" and was cumulative.

The Government, while conceding that "[t]here is no question that the child pornography [Defendant] collected was difficult to view," counters that the number of images the jury viewed, which was a "fraction of [Defendant]'s collection" (according to the Government, approximately 0.4% of it), was properly weighed in the Court's Rule 403 balancing test and rightly showed to the jury.

Over 4,000 images and videos were recovered from Defendant's laptop, and over 400 images and videos from Defendant's cell phone. Before trial commenced, the Government stated its intent to publish a "small sampling" of the child pornography found on the laptop and cell phone despite Defendant's statement that he would stipulate to the images being "child pornography." Specifically, the Government originally sought to publish 19 images from the laptop and 9 images (28 images total) from the cell phone, and the entirety of a minutes-long video. After Defendant objected to this evidence as unnecessarily cumulative and risking unfair prejudice under Rule 403, citing *United States v. Hester*, 674 Fed. Appx. 31 (2d Cir. Dec. 22, 2016) (summary order), *cert. denied* 137 S. Ct. 2203 (2017), the

Government elected to pare down its exhibit list, to 11 images from the laptop and 7 images from the cell phone (so, 18 images total), and one 20-second video clip from the several-minute-long video.

The Court and the parties viewed the subject images and video clip in the Courtroom on the Government's Internet-disabled laptop during the final pretrial conference, so that the Court could perform its Rule 403 balancing test prior to the start of trial. The Court ultimately overruled Defendant's objection and permitted the Government to display the images, for a few seconds each, as well as the 20-second video clip, finding that the Government had "minimized the risk of unfair prejudice" in selecting a small portion of the photographs and videos underlying Counts 3 and 4 to display.

"In limited circumstances, the Government can be required to accept a stipulation by the defendant to a particular fact, rather than present evidence proving the stipulated fact." *United States v. Velazquez*, 246 F.3d 204, 211 (2d Cir. 2001). However, "[t]he government generally has a right to present evidence, rather than accept a stipulation, in order to 'tell [the jury] a story of guiltiness[,] . . . to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable[, and] . . . to point to the discrete elements of a defendant's legal fault." *United States v. Harris*, 548 Fed. Appx. 679, 681 (2d Cir. Dec. 18, 2013) (summary order), quoting *Old Chief v. United States*, 519 U.S. 172, 187-188 (1997); *see United States v. Polouizzi*, 565 F.3d 142, 153 (2d Cir. 2009) (same, but in the child pornography context).

Here, the fact that Defendant stipulated to the criminal content of the videos was one factor for the Court to consider in its Rule 403 balancing test.  *See United States v. Cunningham*, 694 F.3d 372, 386 n. 23 (3rd Cir. 2012).

The Court found the "mode of presentation" of the images, in a PowerPoint-type presentation where the images were shown for only a few seconds each, as minimizing the risk of unfair prejudice.  *Polouizzi*, 565 F.3d at 148-149, 153 (each image was "shown to the jury for a few seconds," and "[s]hort segments of the three videos charged in the indictment were played for the jury, [with accompanying testimony] that the un-played portion of each video was similar to the segment played").  The admitted images surely had an emotional impact on the jurors, but both the method of presenting them and the Court's *voir dire* questions concerning the nature of the material to be viewed, minimized the risk of unfair prejudice.[6]

Moreover, although Defendant agreed to stipulate that the images constituted child pornography, the Government had to prove Defendant's "knowing[ ] possess[ion]" of child pornography (Dkt. No. 52 [Second Superseding Indictment]; *see* 18 U.S.C. § 2252A(a)(5)(B)), that Defendant "knew of the sexually explicit nature of the material and that the visual depiction was of an actual minor engaged in that sexually explicit conduct."  3 L. Sand, et al., Modern Federal Jury Instructions-Criminal (2015), ¶62.03, No. 62-26; *see e.g., Harris*, 548 Fed. Appx. at 682 ("While Harris may not have contested that the images were child pornography, the images

---

[6] The Court excused potential jurors for cause when they conveyed their distress in anticipation of viewing images of this nature.  In addition, immediately after 12 jurors and 4 alternates were selected, and all prospective jurors were excused, one of the 12 jurors expressed that he or she could not serve as a juror and view these types of exhibits.  That juror was excused.

were still probative of whether Harris knew that the images were child pornography given the youth of the minors depicted."); *Herndon v. United States*, 359 Fed. Appx. 241, 243 (2d Cir. Jan. 7, 2010) (summary order) ("Even if the stipulation satisfied the child pornography element, the government was still required to prove the knowledge element.  The images allowed the jury to determine how likely it was that Herndon knew the images were child pornography."); *United States v. Solomon-Eaton*, 12-CR-352 (KAM), 2014 U.S. Dist. LEXIS 50013, *8 (E.D.N.Y. Apr. 9, 2014) (citing *Harris*).

The nature and content of the images were also relevant to and probative in the jury's evaluation of Defendant's defense that an unidentified individual downloaded the child pornography onto Defendant's computer—in other words, whether the images could have been downloaded in a short period of time, unbeknownst to Defendant.  *See, e.g.*, *United States v. Morales-Aldahondo*, 524 F.3d 115, 120 (1st Cir. 2008) (images were offered "to prove that the images belonged to Morales and not his brother, as Morales had contended"), *cert. denied* 555 U.S. 1005 (2008); *see generally Polouizzi*, 565 F.3d at 152-153 (images were relevant to the jury's assessment of Defendant's insanity defense); *Solomon-Eaton*, 2014 U.S. Dist. LEXIS 50013, at *7 (same).

The Court concludes that it did not err pursuant to Rule 403 in permitting the Government to present the child pornography images to the jury.  *See, e.g.*, *Hester*, 674 Fed. Appx. at 33 (two videos and two still images shown out of 1,000 files, and each video played for only 10 seconds).

The Court has considered Defendant's related arguments about the admission of child pornography images and concludes that they lack any merit, and no further discussion is needed.

C. Introduction of the "masturbation video"

Defendant contends that the video depicting Defendant seated on a couch in the summer of 2018, touching Jane 1's inner thigh while masturbating—filmed about three months before Defendant filmed the videos of Jane 1 and Jane 2 as charged in Counts 1 and 2—was improperly admitted under Rule 414 and ran afoul of Rule 403.[7]

Rule 414 provides, in pertinent part, that "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation.  The evidence may be considered on any matter to which it is relevant."  Rule 414(a).  "[I]n contrast to Rule 404(b), Rule 414 permits evidence of other instances of child molestation as proof of, *inter alia*, a 'propensity' of the defendant to commit child molestation offenses."  *United States v. Larson*, 112 F.3d 600, 604 (2d Cir. 1997); *see United States v. Davis*, 624 F.3d 508, 511-512 (2d Cir. 2010) (Rule 414 is "an exception to the usual proscription

---

[7] In passing, Defendant questions whether he was the man depicted in the masturbation video.  Dkt. No. 120, p. 11 ("the jury was also shown a video of a man the Government *claimed was Schohn…*") (emphasis added).  L.P. identified Defendant in the video at trial, however, recognizing the clothes he was wearing—that she laundered for him—and the way he was wearing his hat, her living room, and the particular day shown in the video as one of the first times Defendant was at her house with Jane 1 and Jane 2.  Dkt. No. 125, pp. 14-16.  As such, the jury had plenty of evidence to conclude, and it did, that Defendant was the man in the video, and that this was not a circumstance of mistaken identity.

against admission of prior crimes 'to prove the character of a person in order to show action in conformity therewith.'"), quoting Rule 404(b).

Preliminarily, Defendant contests whether the actions observed in the video constitute an act of "child molestation" within the meaning of Rule 414.  In turn, the Government argues that the conduct in the video constitutes "child molestation" within the meaning of Rule 414(d), under both state and federal law.

"Child molestation" is defined by the Rule as "a crime under federal law or under state law . . . involving . . . any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child."  Rule 414(d)(2)(A).  Defendant's argument is without merit, as his conduct in the masturbation video evidently fits this definition.[8]

Aside from admissibility, "Rule 414 [also] affects the district court's analysis under Rule 403 because it alters the category of permissible inferences available to the jury."  *United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018).  Even so, the district court still has the discretion to determine how probative those inferences are and weigh whether the evidence is unfairly prejudicial.  *Id.*  The Second Circuit has

---

[8] *See* 18 U.S.C. chapter 109A ("Sexual Abuse"), which includes 18 U.S.C. § 2244 (defining "abusive sexual contact" as, among other things, any individual in the "territorial jurisdiction of the United States . . . [who] knowingly engages in sexual contact with another person without that person's permission"); 18 U.S.C. § 2246(3) (defining "sexual contact" as "*the intentional touching, either directly or through the clothing*, of the genitalia, anus, groin, breast, *inner thigh*, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or *arouse or gratify the sexual desire of any person* [emphases added]").  The Government argues that state law also prohibits Defendant's actions, and thus constitutes "child molestation" under Rule 414(d)(2)(A).  *See* New York Penal Law § 130.60(2) (sexual abuse in the second degree, criminalizing "sexual contact" of another person less than 14 years of age); New York Penal Law § 130.00(3) (defining "sexual contact" to include "any touching of the sexual *or other intimate parts* of a person for the purpose of gratifying sexual desire of either party" [emphasis added]).  L.P. testified at trial that Jane 1 was born in 2010 (Dkt. No. 125, p. 3), so in 2018 when the video was filmed Jane 1 was around 8 years old.

set forth factors the Court should consider in its Rule 403 analysis of Rule 414

evidence, "[i]n determining the probative value of prior act evidence":

> (1) the similarity of the prior acts to the acts charged, (2)
> the closeness in time of the prior acts to the acts charged,
> (3) the frequency of the prior acts, (4) the presence or lack
> of intervening circumstances, and (5) the necessity of the
> evidence beyond the testimonies already offered at trial.
> The district court should also consider the potential for
> unfair prejudice, including the possibility that prior act
> evidence will lead the jury to convict out of passion or bias
> or because they believe the defendant is a bad person
> deserving of punishment — a particular risk with this sort
> of evidence.

*Id.* (internal quotation marks and citations omitted).

As the Court here noted in making its evidentiary ruling, "[t]here can be no

doubt that admission of a prior [act of] child molestation carries a high risk of

prejudice for any defendant, especially one charged with sexual exploitation of a

minor." *Davis*, 624 F.3d at 512.  Even so, the Second Circuit has noted that Rule

414's legislative sponsors "expected that convictions within its ambit would normally

be admitted and that their prejudicial value would normally not be outweighed by the

risk of prejudice." *Id.*, citing *Larson*, 112 F.3d at 604.

Here, the Court held that the masturbation video was admissible under Rule

414 and Rule 403, properly balancing the probative value of this prior act evidence

against its potential prejudicial effect.[9]  The masturbation video was surely relevant

to whether the videos from the two production counts constituted "sexually explicit

conduct" and a "lascivious exhibition" of Jane 1's and Jane 2's genitals or pubic

---

[9] The Court stated that it did not need to reach the Government's alternative argument for admissibility under Rule 404(b).

area, particularly in the jury's consideration of the sixth *Dost* factor ("whether the visual depiction is intended or designed to elicit a sexual response in the viewer"). Moreover, Defendant's defense at trial was that he inadvertently filmed Jane 1 and Jane 2, rather than covertly doing so.  Specifically, he testified that as to Jane 1, he placed his laptop in front of the toilet because it was the best spot for acoustics and listening to music, and as to Jane 2, he placed his laptop in front of the girls while they were changing so they could watch a cartoon—and he later adjusted the screen due to a glare.  Defendant asserted that he did not know his laptop was recording Jane 1 or Jane 2.  *See* Dkt. No. 124, pp. 6-7, 9-14.

As such, the Court admitted the masturbation video as highly probative to showing Defendant's intent and motive in filming Jane 1 and Jane 2.  The Court also considered the close proximity in time between these events, a matter of only three months, with no known intervening circumstances, and the fact that the acts depicted in the masturbation video involved the same minor victim, Jane 1.  *See United States v. O'Connor*, 650 F.3d 839, 853-854 (2d Cir. 2011) (rejecting defendant's argument that prior act evidence from over 30 years before his charged sexual abuse "lacked probative value because [it] was too remote in time"); *see also Davis*, 624 F.3d at 512 (no abuse of discretion in admitting testimony of conduct occurring 19 years earlier); *Larson*, 112 F.3d at 605 (no abuse of discretion in admitting testimony covering events that occurred 16 to 20 years before the trial, where "[t]he similarity of the events clearly demonstrated the . . . testimony's relevance").  Furthermore, the masturbation video was arguably relevant to the possession counts as well, considering Defendant's claim that "another person with

24

access to [his computer] had downloaded the child pornography"; evidence that Defendant had recently had sexual contact with a child "ma[de] it less likely that, by sheer coincidence, he also unwittingly possessed child pornography downloaded by others." *Spoor*, 904 F.3d at 155.

The Court also issued a limiting instruction to the jury when the Government displayed the masturbation video, allowing the jury to consider the masturbation video only as propensity evidence to determine whether Defendant committed the charged offenses. The Court further explained that the conduct on the masturbation video was not on its own sufficient to prove Defendant's guilt as to the charged crimes, and reminded the jury that Defendant was not on trial for any conduct not charged in the Second Superseding Indictment. *See* Dkt. No. 135, p. 60 (Court's limiting instruction); *see, e.g.*, *Larson*, 112 F.3d at 603; *United States v. Nam Vu Bui*, 859 Fed. Appx. 610, 611 (2d Cir. Sept. 27, 2021) (summary order).

Defendant cites to case law where district courts prohibited the Government from offering Rule 414 prior act evidence in its case-in-chief, determining the probative value of that evidence was substantially outweighed by the potential for unfair prejudice under Rule 403, or where Circuit courts reversed a conviction when the district court improperly admitted such evidence. The Court finds those cases to be factually distinguishable.[10]

---

[10] *See, e.g.*, *United States v. Fawbush*, 634 F.3d 420, 421-423 (8th Cir. 2011) (Eighth Circuit reversed conviction and remanded for a new trial where prior act evidence was inadmissible *under Rule 404(b)*, as "[t]he challenged testimony . . . concern[ed] acts that [were] unrelated to, and . . . occurred eight or more years before, the conduct charged," and also inadmissible under Rule 403, as the evidence was that "Fawbush had sexually abused his daughters and had fathered a child with one of them"); *United States v. Grimes*, 244 F.3d 375, 377-379, 383-385 (5th Cir. 2001) (Fifth Circuit vacated conviction and remanded for a new trial where "district court abused its discretion in admitting into evidence [*under Rule 404(b)*] the

Finally, Defendant's assertion that "the video was so inflammatory that the jury was distracted from the material issues in the trial" cannot pass muster. The masturbation video "did not involve conduct any more sensational or disturbing than the crimes with which [Defendant] was charged," and thus did not unfairly prejudice Defendant to the point of warranting exclusion under Rule 403. *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Moreover, in the Court's observation of the jurors, they all appeared attentive throughout the trial, and there was no indication they deviated from their sworn duty after viewing the masturbation video.

### D. Investigator Lombardi offering both fact and expert testimony

During the trial, Defendant argued that one of the Government's witnesses, Investigator Lombardi, should be precluded from testifying in a "dual role" as both a fact witness and an expert witness, because he participated in both the investigation and examination of Defendant's devices. According to Defendant, this could "create jury confusion and improperly bolster his fact testimony." Defendant also argued that Investigator Lombardi should not be permitted to testify that any images on the subject devices constituted "child pornography," as that would invade the province of the jury.

---

contents of two sexually-explicit narratives," where defendant was charged with possession of child pornography that was "non-violent in nature" and thus "of a different sexual nature" from the admitted narratives); *United States v. Bunty*, 617 F. Supp. 2d 359, 362, 373-376 (E.D. Pa. 2008) (Rule 414 prior acts not similar enough, and too remote-in-time, to the charged offenses of transportation and possession of child pornography to be admissible, where prior acts evidence was that defendant sexually abused family members 23 to 33 years before, and the Court could not ignore the possibility that the jury could convict Defendant of these unrelated offenses based solely on the "stigma associated with incest").

Following argument on this issue and the Court explaining the Second Circuit's reservations about permitting Government witnesses to testify in this capacity, the Court had the Government proffer Investigator Lombardi's anticipated testimony.  The Court cautioned the Government against its witness bolstering previously received evidence, testifying about topics that were readily interpretable to the jury, or making legal conclusions that were for the jury to decide.  The Court then denied Defendant's motion to preclude and stated that it would allow Investigator Lombardi's testimony but within the discussed parameters.

In his Rule 33 motion, Defendant again raises this issue and asserts that the Court's evidentiary ruling was in error, and that the "overall effect" and "clear implication" of Investigator Lombardi's testimony was that "all of the located material was, in fact, child pornography."  He reasons this was particularly prejudicial because of his argument that the video from Count 2 did not show "sexually explicit conduct."  *See supra*, Point I-C.  The Government disagrees, asserting that the testimony was "properly tailored to comply with the Second Circuit's concerns about fact and expert witnesses."

"[T]he decision of whether to admit expert testimony is left to the discretion of the trial judge and should not be set aside unless manifestly erroneous . . . A witness offering so-called dual testimony, testifying as both an expert and as a fact witness, is not objectionable in principle."  *United States v. Faison*, 393 Fed. Appx. 754, 758 (2d Cir. Sept. 14, 2010) (summary order) (internal quotation marks and citations omitted).

The Second Circuit has stated, "particular difficulties, warranting vigilance by the trial court, arise when an expert, who is also the case agent, goes beyond interpreting code words and summarizes his beliefs about the defendant's conduct based upon his knowledge of the case." *United States v. Dukagjini*, 326 F.3d 45, 53 (2d Cir. 2002). Despite this and other concerns about a Government witness testifying in a dual role, "[t]he Rules of Evidence provide a liberal standard for the admissibility of expert testimony." *Id.* at 52. And courts have routinely qualified agents to testify in the field of forensics, concluding that specialized knowledge or skill was required in that area. *See, e.g.*, *United States v. Stanley*, 533 Fed. Appx. 325 (4th Cir. 2013); *United States v. Springstead*, 520 Fed. Appx. 168 (4th Cir. 2013); *United States v. Ganier*, 468 F.3d 920 (6th Cir. 2006).

The Court concludes that Investigator Lombardi's testimony did not transgress the Second Circuit's concerns about "dual testimony," and his testimony concerning the field of forensic analysis "help[ed] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

For example, Investigator Lombardi opined that, based upon the dates and times on the videos recovered from Defendant's devices, and the lengths of those videos (*i.e.*, the Count 1 and Count 2 videos, and the masturbation video, which Investigator Lombardi did *not* refer to in those terms), there were "strong indicator[s] that the[ ] videos were not edited or modified after they were recorded." Dkt. No. 135, pp. 64-66. He also testified that based on his review of the data from both devices, it was "not possible" that the images, videos, and corresponding metadata were put on the devices "within a matter of hours." Dkt. No. 135, p. 88. This was

28

due to the volume of the images and videos, the various folders they were in, and

the difficulty of manipulating Internet history.  Dkt. No. 135, p. 88.  Investigator

Lombardi later conceded on cross-examination by Defendant that while unlikely, it

was "not impossible" to manipulate the devices' software.  Dkt. No. 135, p. 101.

This testimony by Investigator Lombardi was used to rebut Defendant's theory that

someone else "planted" the data, including the subject video and image files, on

Defendant's devices during one singular event.

Although not raised by the parties, the Court notes that at one point during his

direct examination, after Investigator Lombardi was asked questions to counter

Defendant's theory that someone else had access to his devices and attempted to

frame him, the following exchange took place:

> Q:  And specifically the data that we saw associated with
> each of the files, the create date, the last write date, the
> binary copies, the visual copies, can you explain to the
> jury the – what it would take to put not just the image and
> video files of them, but then to also put that corresponding
> data onto a device?
>
> A:  With copies and everything included, there was over
> 11,000 files of child pornography located on item number
> 1 [the laptop].  So to put all those in there and then cause
> them to be put into unallocated space and end up in
> allocated space would take an inordinate amount of time
> and a level of expertise to be able to do that, to know how
> to put that data on there on purpose, and have it appear in
> different locations.

Dkt. No. 135, pp. 88-89 (emphasis added).

It appears Investigator Lombardi inadvertently used the term "child

pornography" at this point in his testimony, to explain the tedious and lengthy

process it would take to load all the files and data onto the devices.  As argued by

the Government, it did not elicit an opinion from Investigator Lombardi about an ultimate issue, namely, "whether the images and videos constituted child pornography."

At no other time did Investigator Lombardi use that term, other than explaining that "PTHC refers to preteen hardcore for child pornography terms" (this testimony was simply in the context of Investigator Lombardi explaining to the jury that he examined the Internet search history of the two devices). Dkt. No. 135, pp. 69-70; *see Dukagjini*, 326 F.3d at 53 (suggesting that an expert/ case agent may properly "interpret[ ] code words"). Rather, the Assistant United States Attorney conducting her direct examination purposefully avoided saying "child pornography" during her questioning, and instead used phrases such as "video and image files of evidentiary value" and "pertinent items of evidence," with Investigator Lombardi answering with phrases like "images and videos of a similar type."[11]

Moreover, there was no indication at trial that the jury was confused by Investigator Lombardi's testimony in this dual role. The jury was instructed in the final charge that Investigator Lombardi had testified to both facts and opinions, and that the jury should consider each of those types of testimony separately and assign them the proper weight. The Court then explained how to consider each type of testimony. *See, e.g., United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir. 2000)

---

[11] Defendant himself used the term "child pornography" twice when cross-examining Investigator Lombardi about his use of a particular software program during the forensic investigation. Dkt. No. 135, pp. 92 ("I'm under the impression based on the evidence that I've seen that that is where you put the accumulation -- you organized and gathered the accumulation of all child pornography evidence that you found into that particular program; would that be correct to say?"), 93 ("So on that particular CD with the Griffeye on it, how many -- this was supposed to be accumulation of all child pornography files located on the laptop. That would have been the whole collection of 5,000 files, videos, pictures, all together right?").

(in rejecting the defendant's argument on appeal that admitting the special agent's challenged direct testimony when he was testifying as both an expert and a fact witness was "manifestly erroneous," the Second Circuit noted that "the district court advised the jurors that they were free to give opinion testimony whatever weight they thought it deserved or to disregard it entirely, if they believed that the opinion of an expert witness was not sufficiently based on experience or if it was outweighed or contradicted by other evidence").  At no point did the jury express confusion or send a jury note regarding this instruction.  Rather, the jury verdict was returned within a matter of hours, with only one note from the jury requesting to again view the images from the cell phone as to Count 4.  *See* Court Exhibit No. 6.

The Court concludes that although Investigator Lombardi's use of the term "child pornography" (*see* Dkt. No. 135, pp. 88-89) may have bordered on improper, having "examine[d] the entire case, take[n] into account all facts and circumstances, and [having] ma[d]e an objective evaluation" (*Ferguson*, 246 F.3d at 134), a new trial is not warranted.  There is no need "to avert a perceived miscarriage of justice" (*Sanchez*, 969 F.2d at 1413) or "a manifest injustice" (*Canova*, 412 F.3d at 349) in this case.

E. <u>Evidentiary rulings altogether impacting Defendant's right to a fair trial</u>

In sum, the Court has given due consideration to the collective weight of the evidence, each of Defendant's arguments concerning evidentiary rulings, and Defendant's arguments for a new trial.  The Court finds the jury's verdict was not manifestly unjust.  Defendant's motion for a new trial pursuant to Rule 33 is therefore denied.

## CONCLUSION

For the foregoing reasons, Defendant's motions (Dkt. No. 120) pursuant to Federal Rule of Criminal Procedure 29(c) for a judgment of acquittal notwithstanding the jury's verdict or, alternatively, for a new trial pursuant to Federal Rule of Criminal Procedure 33, are DENIED.

Sentencing is scheduled for August 15, 2022 at 12:30 p.m.  The sentencing will take place in person, in the Courtroom.  The parties are directed to the Court's forthcoming Text Order for the submission of sentencing documents.


**SO ORDERED.**


_s/Richard J. Arcara_____
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated:  May 10, 2022
         Buffalo, New York